UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Chase Bailey, Individually,
        Plaintiff/Counter-Defendant

        v.

Lynn Buskey, Shawn McCarthy,                  Case No. 12-cv-396-SM
and Buskey & McCarthy, LLP,                    Opinion No. 2015 DNH 103
        Defendants/Counter-Claimants/
        Third-Party Plaintiffs

        v.

Michael E. Chubrich, and
Michael E. Chubrich, P.A.,
        Third-Party Defendants,

## O R D E R

This litigation arises out of a somewhat complicated insurance premium financing transaction gone wrong.  Plaintiff, Chase Bailey, seeks damages from defendants (his former attorneys and their law firm), asserting that they provided him with negligent legal advice and representation.  In response, defendants advance two counterclaims against Bailey: breach of contract and quantum meruit, both of which arise out of Bailey's alleged failure to pay legal fees defendants say they are owed.  Additionally, defendants advance a third-party claim against Bailey's successor legal counsel, Michael Chubrich, and his law firm.  Defendants assert that, to the extent they are found

liable on Bailey's negligence/malpractice claims, Chubrich and his law firm are liable to them for contribution.

The third-party defendant, Attorney Chubrich, moves for summary judgment on the sole claim advanced against him - that is, his alleged liability under New Hampshire's contribution statute.  For the reasons discussed, that motion is denied.

### Standard of Review

When ruling on a motion for summary judgment, the court must "constru[e] the record in the light most favorable to the non-moving party and resolv[e] all reasonable inferences in that party's favor."  Pierce v. Cotuit Fire Dist., 741 F.3d 295, 301 (1st Cir. 2014).  Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence."  Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).  See also Nolan v. CN8, 656 F.3d 71, 76 (1st Cir. 2011).  Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly

probative," no genuine dispute as to a material fact has been
proved, and "summary judgment may be granted."  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations
omitted).

The key, then, to defeating a properly supported motion for
summary judgment is the non-movant's ability to support his or
her claims concerning disputed material facts with evidence that
conflicts with that proffered by the moving party.  See generally
Fed. R. Civ. P. 56(c).  It naturally follows that while a
reviewing court must take into account all properly documented
facts, it may ignore a party's bald assertions, speculation, and
unsupported conclusions.  See Serapion v. Martinez, 119 F.3d 982,
987 (1st Cir. 1997).  See also Scott v. Harris, 550 U.S. 372, 380
(2007) ("When opposing parties tell two different stories, one of
which is blatantly contradicted by the record, so that no
reasonable jury could believe it, a court should not adopt that
version of the facts for purposes of ruling on a motion for
summary judgment.").

**Background**

The relevant factual background has been set forth at length
in the parties' memoranda and this court's prior order.  It need
not be detailed again.  It is sufficient to note that in 2008,

3

Bailey retained defendants, Lynn Buskey, Shawn McCarthy, and their law firm (collectively, "B&M"), to create a life insurance trust, for which they then acted as trustees.  That trust subsequently acquired a $20 million life insurance policy from AIG.  In 2009, a replacement policy was sought from Security Life of Denver (also known as "ING"), with premiums to be financed through the sale of bonds, which would be issued by the trust. The new financing closed on January 28, 2010.  As part of that transaction, Bailey agreed to act as guarantor and was obligated to provide $1.7 million in collateral to Compass Bank.  In turn, Compass Bank was obligated to issue a letter of credit.  Things did not, however, go according to plan.  Bailey refused to provide the required collateral to Compass Bank.

Instead, approximately one week after the closing, Bailey contacted Attorney Michael Chubrich to review the entire transaction.  That initial meeting lasted about an hour.  Bailey explained to Chubrich that he had been informed by his insurance agent that the collateral he was to provide to Compass Bank would be available for him to use as he saw fit and that the purchase of the life insurance policy would not cost him anything out of pocket.  While he did not need a $20 million life insurance policy, Bailey said he agreed to proceed with the transaction

because he thought he would recognize some sort of financial
benefit from it.

Bailey also explained that he needed access to (and use of)
the money in his investment account to address a number of
personal financial issues and could not afford to pay $1.7
million to Compass Bank.  Accordingly, he asked Chubrich whether
he could transfer a substantial sum of money (perhaps the entire
$1.7 million) to a bank in France.  Part of B&M's claim that
Chubrich acted negligently includes the assertion that Chubrich
advised Bailey on that issue before familiarizing himself with
the complexities of the financing transaction and Bailey's
obligations under it.  Because Chubrich's advice to Bailey on
that issue is central to B&M's contribution claim, it is,
perhaps, best to quote directly from Chubrich's deposition
testimony.  Chubrich testified that:

> My best recollection was that [I advised Bailey that]
> he should not purchase any real estate in France; that
> as long as the money would be safe, not subject to any
> currency restrictions or whatever else, that he could
> transfer it when he received it to France, but it
> should be protected, kept liquid, because it sounded
> like he was in the middle of a difficult situation and
> that it would be expensive to get out.

Deposition of Michael Chubrich (document no. 77-3) at 14.  Bailey
testified in a similar manner, stating that Chubrich advised him
that he could transfer the money out of the country, as long as

it remained safe and liquid.  <u>See</u> Deposition of Chase Bailey
(document no. 77-4) at 82-83.  Plainly, then, as early as one
week after the closing, Bailey was considering breaching his
financial obligations to Compass Bank.

Eventually (the precise timing is unclear), Bailey decided
not to provide the required capital to Compass Bank and asked
Chubrich to take the steps necessary to "unwind" the transaction.
Chubrich began by filing suit in New Hampshire state court,
seeking to rescind the life insurance policy on grounds that
Bailey agreed to purchase it in reliance upon fraudulent
statements made by his insurance agent, James Archibald.  And, as
part of his efforts to understand the complex premium financing
transaction in which Bailey was involved, Chubrich sought advice
from another attorney, as well as an insurance expert.  <u>See</u>
Chubrich deposition at 21-22 and 24-26.

In September of 2010, after Bailey refused to provide the
$1.7 million as collateral to Compass Bank, the bank sued him in
Alabama.  Attorney Chubrich assisted Bailey in obtaining counsel
to represent him in that litigation.  And, subsequently, Bailey
retained new counsel in New Hampshire to replace Chubrich, due to
the complexity of the multiple suits in which he was involved.
Ultimately, the litigation with Compass Bank was resolved in

arbitration, and Bailey was ordered to pay the bank approximately
$2 million.

In this action, Bailey seeks to recover damages from B&M
saying, in essence, that but for their negligence and poor legal
advice to him, he would have never entered into the transaction
with ING and Compass Bank.  B&M, in turn, seek contribution from
Attorney Chubrich for at least a portion of any damages for which
they might ultimately be found liable.

## Discussion

I.   <u>The Nature of B&M's Claim</u>.

B&M seek contribution from Chubrich on grounds that his
negligent advice to Bailey proximately caused Bailey to default
on his obligations to Compass Bank, resulting in additional and
unforeseeable damages, unrelated to any advice given or action
taken by B&M.  According to B&M:

> As a result of Chubrich's negligent advice and his
> breach of the duties he owed Bailey, Bailey transferred
> the money offshore which caused Bailey to default on
> his obligations to Compass Bank.  Bailey admits that
> this led to Compass Bank filing the action against him
> in Alabama, which was transferred to arbitration, and
> settled for $2 million.
>
> Under Bailey's allegations, <u>Chubrich was a joint
> tortfeasor</u> in causing Bailey's alleged damages.  The
> only damages Bailey claims he actually suffered are as
> a result of not posting the $1.7 million to the Compass
> account. . . . Bailey believes that he entered into a

> bad deal and Buskey & McCarthy should have warned him.
> <u>However, Bailey's alleged damages as a result of
> entering the "bad deal" were also caused by Chubrich's
> negligent advice regarding the completion of the
> transaction</u>.

Defendants' Memorandum (document no. 81) at 3-4 (emphasis
supplied).  In other words, B&M assert that if they are liable to
Bailey for failing to counsel him <u>against</u> entering the
transaction with Compass Bank, Chubrich is also liable for
failing to advise him to <u>complete</u> that transaction.  <u>See Id.</u> at 4
("If Buskey & McCarthy are found liable to Bailey with regard to
his signing the transaction documents on January 28, 2010, then
Chubrich is also liable for failing to advise Bailey to transfer
the $1.7 million to Compass Bank to fulfill Bailey's obligations
to complete the transaction.").

It is, to be sure, an unusual theory of recovery.
Nevertheless, it has some logical appeal.  B&M seem to assert
that once Bailey committed to the financing transaction by
signing the closing documents on January 28, 2010, his best (or
least costly) option was to comply with his contractual
obligations and provide the required security to Compass Bank.
According to B&M, Chubrich malpracticed Bailey when he counseled
Bailey to withhold payment to Compass Bank and, instead, set
about attempting to "unwind" the transaction.

In support of their claim that Chubrich acted negligently, B&M assert that Chubrich lacked the requisite knowledge and professional skill to properly advise Bailey about complex insurance premium financing transactions, and failed to understand the intricacies of this particular transaction. Additionally, they point out that while Chubrich did consult with outside experts, he did so only well <u>after</u> he had already advised Bailey he could "unwind" the transaction. And, say B&M, that advice was based upon the legally incorrect assumption that Bailey could simply rescind the life insurance policy on grounds that it was obtained through fraud. He could not. Because the trust, not Bailey, was the holder of the insurance policy, only the trust could rescind the policy (which the trustees refused to do). According to B&M, Chubrich committed malpractice by, among other things, basing his legal advice and strategy on that critical misunderstanding. And, say B&M, by wasting time on that flawed strategy rather than advising Bailey to honor his obligations to Compass Bank, Chubrich prompted the bank to sue Bailey, thereby independently causing at least a part of the damages for which Bailey now seeks recovery.

In short, B&M seem to claim that once Bailey signed the closing documents and became obligated to provide the collateral to Compass Bank, a properly informed and appropriately

knowledgeable attorney of reasonable skill would have advised
Bailey to honor his contractual obligations.  By counseling
Bailey to do otherwise, say B&M, Chubrich acted negligently and
provided unsound legal advice that proximately caused Bailey to
incur a greater financial loss than he otherwise would have
incurred.  B&M seek contribution from Chubrich for that (alleged)
additional loss.


II.  <u>Governing State Law</u>.

New Hampshire law provides that "a right of contribution
exists between or among 2 or more persons who are jointly and
severally liable upon the same indivisible claim, or otherwise
liable for the same injury, death or harm."  N.H. Rev. Stat. Ann.
("RSA") 507:7-f I.  Here, as noted, B&M assert that at least a
portion of the damages Bailey claims to have suffered were
proximately caused by Attorney Chubrich's legal malpractice.
Accordingly, B&M seek contribution from Chubrich for those
damages.


To demonstrate that Attorney Chubrich acted negligently in
advising Bailey (i.e., committed malpractice), B&M must establish
that: (1) an attorney-client relationship existed between
Chubrich and Bailey - a relationship that would impose upon
Chubrich a duty to exercise reasonable professional care, skill,

10

and knowledge in providing legal services to Bailey; (2) Chubrich breached that duty of care; and (3) Bailey suffered damages that were proximately caused by that breach.  See Wong v. Ekberg, 148 N.H. 369, 373 (2002).  Determining whether an attorney-client relationship existed is a question of law for the court to resolve, but determining whether an attorney breached his or her professional duties to the client is a factual question for the jury to resolve.  See, e.g., Furbush v. McKittrick, 149 N.H. 426, 432 (2003) ("Though the existence of the defendant's duty to the plaintiff is a question of law, it is for the fact-finder to determine whether, under the circumstances of the case, the defendant breached his duty to exercise reasonable professional care and that the defendant's breach caused the plaintiff's harm.") (citations omitted).  Moreover, "while summary judgment may be appropriate if the evidence of negligence is so conclusive that reasonable persons can reach but one conclusion, such instances are exceedingly rare."  Id. at 432-33 (citations and internal punctuation omitted).  This is not one of those rare cases.

While no one denies that there was an attorney-client relationship between Bailey and Chubrich, the parties very much dispute whether Chubrich breached any professional obligations he owed to Bailey.  B&M and Chubrich have submitted lengthy

11

arguments concerning the scope and nature of the professional
duties Chubrich owed to Bailey, and whether or not he breached
those duties.

    As evidence of Attorney Chubrich's alleged negligence, B&M's
expert opines that he: had "no experience with complicated
premium financing transactions and did not have adequate time or
the capacity to review the documents and understand the
consequences of Mr. Bailey's default;" (2) mistakenly believed
Bailey could rescind the policy and thereby unwind the
transaction; (3) failed to "grasp even the basics of the
transaction or the consequences of Mr. Bailey's failure to
provide the required collateral;" and, nevertheless, (4) "advised
Mr. Bailey not to provide the collateral [to Compass Bank] and
advised Compass in writing of that decision," which prompted
Compass to sue Bailey in Alabama.  Supplemental Expert Report
(document no. 81-14).  That expert opinion evidence, likely
admissible at trial, is sufficient to create a genuine dispute of
material fact which defeats summary judgment.  The trier-of-fact,
not the court, will have to resolve that dispute.  Consequently,
at least at this juncture, the court cannot conclude that
Attorney Chubrich is entitled to judgment as a matter of law with
respect to B&M's contribution claim.

Parenthetically, the court notes that it is entirely unclear whether Bailey is even entitled to recover the "additional" damages he says he incurred as a result of his refusal to provide the required capital to Compass Bank (that is, the measure of damages he says he incurred <u>beyond</u> the damages he would have incurred had he simply complied with his contractual obligations to Compass Bank - likely the difference between the arrangement crafted by B&M and the arrangement Bailey claims should have been crafted).  But, B&M never advised him to breach those obligations to Compass Bank; in fact, they counseled him to honor them. Consequently, it is difficult to imagine how those additional damages flowing from Bailey's breach might have been foreseeable, or how B&M could be liable for them (though, of course, the parties have not yet briefed that issue).  And, if B&M are not liable for those additional damages, their contribution claim against Chubrich likely evaporates (Chubrich is not directly liable to Bailey for those additional damages because Bailey has not advanced any claims against Chubrich).

But, because the measure of Bailey's recoverable damages is not currently before the court, B&M's contribution claim against Chubrich must (at least for the time being) remain.

13

## Conclusion

For the foregoing reasons, Attorney Chubrich's motion for summary judgment (document no. 77) is denied.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

May 19, 2015

cc:  Scott M. Fogg, Esq.
     Sean T. O'Connell, Esq.
     Robert A. McCall, Esq.
     Scarlett M. Rajbanshi, Esq.
     Lawrence J. Kenney, Jr., Esq.
     Tierney M. Chadwick, Esq.

14